STATE OF NORTH CAROLINA v. ELIJAH TYRONE FAIRE
AND CLARENCE CARR

No. 748SC535

(Filed 7 August 1974)

1. Indictment and Warrant § 10— incorrect middle name — motion to quash indictment

The trial court properly denied defendant's motion to quash the indictments against him on the ground that each bill incorrectly designated his middle name as "Tyrone" rather than as "Junior" since defendant was adequately identified in the indictments as the person charged and the mistaken designation of his middle name did not prejudice him at trial where the identification issue concerned his physical appearance rather than his name.

2. Kidnapping § 1; Robbery § 4— sufficiency of evidence

The State's evidence was sufficient for the jury in a robbery and kidnapping case where the victim positively identified defendants as the perpetrators of the crimes.

3. Criminal Law § 66— in-court identification — opportunity for observation

The trial court did not err in the admission of a taxi driver's in-court identification of defendants as the persons who robbed and kidnapped her where the voir dire evidence showed that 30 minutes elapsed between the time the victim picked up defendants and her release by them, that she was afforded a number of opportunities to observe defendants' physical appearance by reason of the street lights, the taxi's exterior and interior lights, the absence of disguises and blindfolds, her close proximity to her assailants, and their brutality toward her and her composed and alert behavior, and that the victim gave police a description of defendants' physical characteristics and clothing which was confirmed upon their apprehension later that evening.

4. **Criminal Law § 66— in-court identification — pretrial photographic identification**

A conviction based on in-court identification following a pretrial photographic identification will be set aside only if the photographic identification procedure was so suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

5. **Criminal Law § 66— photographic identification — legality**

Photographic identification procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification where a robbery and kidnapping victim examined a book containing over 50 photographs of Negro males but recognized no one, the victim thereafter examined a group of six photographs of black males of approximately the same age, including a photograph of defendant which had just been made after his arrest, the victim positively and unhesitatingly identified defendant as one of her assailants as soon as she saw his photograph, and officers did not tell the victim that they had just picked up two suspects and did not suggest in any way whom she should identify.

6. **Constitutional Law § 32; Criminal Law § 66— photographic identification — right to counsel**

The Sixth Amendment does not grant the right to counsel at photographic displays conducted by the prosecution for the purpose of allowing the witness to attempt an identification of the offender.

7. **Criminal Law § 66— in-court identification — accidental confrontation at police station**

Robbery and kidnapping victim's in-court identification of defendant was properly admitted, notwithstanding the victim identified defendant when she saw him sitting in a dispatcher's office at the police station while defendant was not represented by counsel, where the court found upon supporting *voir dire* evidence that the confrontation at the police station was unarranged and accidental and that the in-court identification was of independent origin.

8. **Arrest and Bail § 3— arrest without warrant — legality**

Defendant's arrest was legal under G.S. 15-41 (1) where an officer saw defendant take a pistol from his pocket and place it under the front seat of the cab in which he was sitting; furthermore, defendant's arrest would have been justified under G.S. 15-41 (2) since a robbery and kidnapping victim had given one of the arresting officers a description of her assailants and defendant fits the description of one assailant.

APPEAL by defendants from *James, Judge,* 10 December 1973 Session of Superior Court held in WAYNE County.

Each defendant was separately indicted for armed robbery and for kidnapping. The State's evidence showed that at about 6:00 p.m. on 28 October 1973, Shelby Jean Walker, a cab driver for the Savage Taxi Company in Goldsboro, N. C., was dis-

patched to 111 Marion Street where she picked up the defendants, Clarence Carr getting into the front passenger seat and Elijah Faire into the back. As the cab crossed railroad tracks near Dillard Street, Faire grabbed Mrs. Walker by the hair, held a pistol to her temple, and shoved her into Carr's arms. Faire then climbed into the driver's seat, drove north on Williams Street for five minutes, and stopped behind the Open Air Market. Faire, holding Mrs. Walker at gunpoint outside the cab, removed approximately $80.00 in cash from her wallet. Carr then took Mrs. Walker behind some nearby bushes and stripped off all her clothes. After some argument about whether to have sexual intercourse with her, the defendants ordered Mrs. Walker to lie down on the back seat, climbed into the front seat, and drove to the end of Olive Street. There, after further discussion, the defendants told Mrs. Walker that they intended to "get" another cab that evening and then allowed her to dress and drive away in her cab. Throughout these events, which lasted between 30 and 45 minutes, defendants several times threatened to kill and repeatedly struck and kicked her. After her release, Mrs. Walker immediately contacted the police, and the defendants were arrested shortly thereafter, Faire sitting in the back and Carr in the front seat of another Savage Taxicab. At the time of the arrest, the arresting officer observed Faire attempting to conceal a pistol, later identified by Mrs. Walker as the weapon used by defendants during commission of the crimes, beneath the front seat of the cab in which defendants were seated. Each defendant testified and denied having seen or ridden with Mrs. Walker at any time that evening. Each defendant was found guilty as charged and given consecutive prison sentences of 20-25 years for kidnapping and 18-20 years for armed robbery.

Attorney General Robert Morgan by Assistant Attorney General Rafford E. Jones for the State.

W. Dortch Langston, Jr., for defendant appellant Elijah Tyrone Faire.

David M. Rouse for defendant appellant Clarence Carr.

PARKER, Judge.

[1]   Defendant Faire moved to quash the indictments against him on the grounds that each bill incorrectly designated his middle name as "Tyrone" rather than as "Junior," which he

contends is his correct middle name as it appears on his birth certificate. The motions were properly overruled. The omission or mistake in designation of an accused's middle initial or name, he being otherwise adequately identified, will not invalidate an indictment, information, or other formal criminal accusation against him. Annot., 15 A.L.R. 3d 968; *cf. State v. Hester,* 122 N.C. 1047, 29 S.E. 380; *State v. Buck,* 6 N.C. App. 726, 171 S.E. 2d 10. Here, defendant Faire was adequately identified in the indictments as the person charged, and the mistaken designation of his middle name in no way prejudiced him at trial, where the identification issue concerned his physical appearance rather than his name.

[2]  Defendants' motions for nonsuit were also properly overruled. At the trial Mrs. Walker positively identified defendants as the men who robbed and kidnapped her. Her testimony disclosed a reasonable possibility that she had observed her assailants sufficiently to permit subsequent identification, and the credibility of that identification was for the jury. *State v. Miller,* 270 N.C. 726, 154 S.E. 2d 902, cited by defendants, is distinguishable on its facts.

[3]  Defendants next contend that the trial court erred in failing to suppress Mrs. Walker's in-court identification of them as the persons who had robbed and kidnapped her. At the close of an extensive voir dire, the trial court made detailed factual findings and concluded that Mrs. Walker's in-court identification of defendants was "lawful and regular in all respects." We agree. Plenary evidence was presented at the voir dire examination to support the trial court's lengthy findings of fact and its conclusion that Mrs. Walker had ample opportunity to observe the defendants during the kidnapping and robbery. Approximately 30 minutes elapsed between the time Mrs. Walker picked up the defendants and her subsequent release by them. Although it was dark throughout this period, street lights, the taxi's exterior and interior lighting, a lack of disguises and blindfolds, the close proximity of assailants and victim, their brutality towards her and her composed and alert behavior, combined to afford her a number of opportunities to observe the defendants' physical appearances. Mrs. Walker described these opportunities and testified to her determination to make the most of them. During her conversation with Goldsboro Police Sergeant Robert Wilson immediately after her release, Mrs. Walker was able to give a description of the defendants' physical

characteristics and clothing, a description which was confirmed when defendants were apprehended by the police later that evening. On this record, the conclusion is compelling that when Mrs. Walker left defendants' presence, she carried with her an accurate mental image of each.

[4-6] Notwithstanding these facts, defendant Faire contends that his in-court identification was tainted by photographic identification procedure which occurred at the police station on the night of his arrest and which he contends was impermissibly suggestive. A conviction based on in-court identification following a pretrial photographic identification will be set aside only if the photographic identification procedure was so suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. U. S.*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968) ; *State v. Knight*, 282 N.C. 220, 192 S.E. 2d 283 (1972) ; *State v. Neal*, 19 N.C. App. 426, 199 S.E. 2d 143 (1973). In the present case, evidence at the voir dire disclosed that shortly after Mrs. Walker was released by her assailants, she was taken to the Goldsboro Police Station where she was asked to examine a book containing more than fifty photographs of Negro males. She did so, but recognized no one. Later during the same evening she was shown a group of six photographs, all in black and white and all of black men. One was a picture of defendant Faire which had just been made after he had been arrested and brought to the station. The other five had been picked at random by one of the officers from pictures of black males as near the age of Elijah Faire as possible. Mrs. Walker positively and unhesitatingly identified Faire as one of her assailants as soon as she saw his picture. At the conclusion of the voir dire the court made detailed findings of the foregoing facts and further found that at the time the group of six photographs was shown Mrs. Walker, the officer did not tell her that they had just picked up two black males and did not suggest in any way whom she should identify. The evidence fully supports the court's findings and conclusion that Mrs. Walker's in-court identification of defendant Faire was of independent origin and was not tainted by any out-of-court photographic identification procdure so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Nor does the fact that defendant Faire was in custody but was not represented by counsel when the photographic identification occurred render the in-court identification inadmissible. The Sixth Amendment does not grant the

right to counsel at photographic displays conducted by the prosecution for the purpose of allowing the witness to attempt an identification of the offender. *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed. 2d 619 (1973). The in-court identification testimony of Mrs. Walker was properly admitted against defendant Faire.

**[7]** After Mrs. Walker identified the picture of Faire and as she was leaving the police station, she passed the dispatcher's office and, looking through an open door, saw defendant Carr. She identified Carr to the police as one of her attackers. At the conclusion of the voir dire hearing the trial judge found that this confrontation was unarranged and accidental and that Mrs. Walker's in-court identification was of an independent origin. These findings, supported by competent evidence, are binding on appeal and dispose of defendant Carr's assignments of error directed to allowing Mrs. Walker's in-court identification testimony against him. *State v. McPherson,* 276 N.C. 482, 172 S.E. 2d 50. The fact that Carr was not represented by counsel at the time Mrs. Walker saw him in the police station did not require exclusion on constitutional grounds of her in-court identification testimony. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed. 2d 411 (1972).

**[8]** Defendant Faire's contention that he was illegally arrested is not supported by the record. Officer May, who made the arrest, testified that as he approached the cab in which defendants were seated, he saw Faire take a pistol from his right front pocket and throw it underneath the front seat. The officer immediately arrested Faire for carrying a concealed weapon, and this arrest was clearly legal under G.S. 15-41(1). In addition, at the time of this arrest, Officer Wilson, who accompanied Officer May, had already interviewed Mrs. Walker and had received from her a description of the two men who had assaulted her. The arrest would also have been justified under G.S. 15-41(2).

We have carefully examined all of appellants' remaining assignments of error and find no prejudicial error such as would warrant the granting of a new trial. Accordingly, in the trial and judgments appealed from we find,

No error.

Judges CAMPBELL and BRITT concur.